[No. 36031.    Department Two.    July 12, 1962.]

THE STATE OF WASHINGTON, *Respondent,* v. JIMMY STERLING
AUSTIN, *Appellant.*\*

*\*Reported in 373 P. (2d) 137.

*Donald D. Haley,* for appellant.

*Charles O. Carroll* and *Robert E. Dixon,* for respondent.

HUNTER, J.—This appeal results from a judgment of conviction of the crime of robbery entered upon a jury verdict of guilty.

The accounts of the events giving rise to the charge of robbery are in sharp dispute according to the testimony of the defendant (appellant) and the testimony of George Day, the victim of the alleged robbery.

The defendant's version of the events is as follows: On November 19, 1960, at approximately 10 a.m., he met George Day, who he then knew only by the name of "Pops," at a drugstore in Seattle. A bottle of wine was purchased with the defendant's money and the two commenced drinking together. Following that, the two went from tavern to tavern drinking beer and wine, purchased mainly with the defendant's money. The defendant testified that Day promised to pay him (the defendant) for the drinks later. About 7 p.m., the defendant and Day separated and did not meet again until 11 p.m. that same night. The defendant testified that he was standing on the corner of 1st Avenue and Washington Street when he noticed George Day walk out from a nearby hotel. The defendant approached Day and asked him to buy drinks. Day asserted that he did not know the defendant and would not buy any drinks. The defendant then asked Day to pay him the money he owed him for the drinks previously purchased by the defendant. Day said he did not owe the defendant any money, and as he was winding his wristwatch, the defendant grabbed his arm and "just pulled his watch off;" Day then remarked, "Go on; take it, anyway. You can't get anything for a Timex watch." The two scuffled and the defendant pushed Day to the ground. About that time, the defendant noticed a police car approaching. He fled to a nearby hotel, where he was apprehended moments later by the policemen who followed him there.

George Day testified as follows: He did not know the defendant and had never seen him before the night of No-

vember 19, 1960. He denied having spent the day drinking with the defendant. He went out of his hotel room to buy a newspaper at 11:30 p.m., when the defendant approached and struck him, causing him to fall to the ground. The defendant then pulled the wristwatch from his arm and also took change (United States coins) and keys from his pocket. He could not state the exact amount of money that was taken. The defendant fled when the police car approached.

The two policemen who apprehended the defendant testified as follows: As they were driving in a police car on 1st Avenue approaching Washington Street, they noticed the defendant strike George Day and knock him down. Coming closer to the scene, they heard coins hitting the street. When the defendant fled, they followed him to a hotel a short distance away and apprehended him in the restroom on the second floor. They searched the defendant and removed 66 cents and two keys attached to a shoestring from his pocket. On the floor of the hallway in the hotel, they found George Day's wristwatch. Upon interrogating the defendant at that time, the defendant stated that he took Day's property because he did not have any money and he was hungry.

The written statement, signed by the defendant, which was admitted at the trial as state's exhibit No. 1, states as follows:

"The above is my true name & at the present time I have no mailing address. I have been living at various hotel in the south business district of Seattle. I am twenty seven years of age, born Aug. 17, 1933 in Henderson Tex. I am unemployed but my occupation is that of a service station attendant.

"Yesterday afternoon at approx 2:00 P.M. I walked into a drug store on the corner of 1st & Washington & bought a pint of wine. While I was in the store I met a elderly colored man whose name I cannot recall. I recognized this man as a person who I had known in 1954. After meeting this colored man, I asked him if he would like a drink with me. He agreed, so the two of us commenced drinking together during the afternoon & early evening.

"Sometime in the early evening we became separate &

I did not see this colored man until sometime around midnight. At midnight I saw this same colored man at 1st & Wash. I approached him & asked him if he had any money. He denied knowing me & made an insulting remark. This remark made me angry so I commenced to skuffle with him. I remember grabbing his arm & pushing him to the ground. While he was on the ground I pulled his watch off of his wrist & grabbed some money, which consisted of small change that I saw roll out of his pocket. I would describe the watch as gold in color & having a stretch band.

"After taking the watch & money I ran south to Yesler & entered the Cascade Hotel. I ran up to the second floor & into the toilet. While I was running on the second floor I apparently dropped the watch.

"While I was in the toilet I was approached by Police Officers & taken into custody.

"The above is a true & voluntary statement, read by me & taken without fear of promise."

The defendant admitted signing the statement voluntarily but denied reading the statement carefully before signing it and denied making some of the admissions as they appear in the written statement.

The defendant's first assignment of error is that the trial court erred in admitting in evidence state's exhibit No. 4, which consisted of the 66 cents found on the defendant's person when he was apprehended by the policemen. It is contended that the coins found in the defendant's possession were not identified as the coins Day claimed to have had taken from him by the defendant; and the mere possession of the coins cannot sustain a reasonable inference that they were taken by the defendant from Day.

■ This contention does not find support in the record. The circumstances of finding coins in the defendant's possession *soon after he fled* from the altercation with Day and the policeman's testimony that the defendant stated to him that he took Day's property because he was hungry and had no money raises the reasonable inference that the money found was the same money taken. Therefore, state's exhibit No. 4 was admissible. See *State v. Barry,* 43 Wn. (2d) 807, 264 P. (2d) 233 (1953), and cases cited therein; 1 Wigmore, Evidence (3d ed.) 601, § 154.

The defendant contends that the trial court erred in giving instruction No. 8, which related to the confession. It is argued that state's exhibit No. 1, the written statement signed by the defendant, does not constitute a *confession,* but is at most an *admission* by the defendant as to certain facts; hence, the trial court's instruction which referred to "confessions" informed the jury of an abstract principle of law not applicable to the evidence and was a comment on the evidence in violation of Art. 4, § 16 of the state constitution.

■■ State's exhibit No. 1 contains admissions of fact which constitute the elements of the crime of robbery. The written statement admits that the property of George Day was taken from him by the defendant with force and violence. On the face of the written statement, there appears no defense, justification or excuse for committing the acts admitted. It is, therefore, permissible to infer, from these admissions, that the acts were committed with the requisite felonious or criminal intent. *State v. Louther,* 22 Wn. (2d) 497, 156 P. (2d) 672 (1945). Hence, the written statement can reasonably be said to constitute a confession. *State v. Turner,* 58 Wn. (2d) 159, 361 P. (2d) 581 (1961). Furthermore, the trial court's instruction was not a comment on the evidence since the court's language in the instruction was as follows:

" . . . *If you find that any such confessions have been made in this case,* you have a right, in weighing such testimony, to consider all the facts and circumstances connected therewith, together with the defendant's interest, if any, in the transaction, and his knowledge, if he had any, of the circumstances surrounding the same, and all other circumstances which may throw any light upon or aid you in weighing such testimony." (Italics ours.)

The determination of whether the written statement was a confession was left to the jury.

■ The defendant next contends the trial court erred in failing to give the defendant's proposed instruction No. 1, which is as follows:

"If you find from the evidence that defendant took prop-

erty from the person of George Day in the honest belief that the property so taken was taken as a pledge for an indebtedness, you must return a verdict of Not Guilty."

Assuming that the proposition of law contained in this proposed instruction is correct in a case where the asserted indebtedness is liquidated and the property taken is not substantially more valuable than the amount claimed due, such an instruction is not applicable to the evidence adduced in the instant case. The defendant's testimony at the trial was to the effect that Day had promised to repay him in kind or in money for drinks previously purchased. However, the record is devoid of any testimony by the defendant that the asserted debt was of a liquidated nature. On the contrary, the defendant's testimony, read in its entirety, makes it clear that the amount claimed was uncertain. Therefore, the taking in the instant case, even if it was for the purpose of securing an honestly claimed indebtedness, will support a robbery conviction. *Tipton v. State*, 23 Okla. Crim. 86, 212 Pac. 612 (1923); *Thomas v. State*, 165 Miss. 897, 148 So. 225 (1933); *Henderson v. State*, 149 Tex. Crim. 167, 192 S. W. (2d) 446 (1946); 2 Wharton's Criminal Law 250, § 550 (1957). The trial court did not err in failing to submit the proposed instruction to the jury.

The defendant also assigns error to the trial court's failure to submit to the jury the defendant's proposed instruction No. 2, which is as follows:

"You are instructed that if you find from the evidence that the defendant snatched or suddenly took property from the person of George Day and said snatching or sudden taking was accomplished without force or violence or the putting said George Day in fear of injury, you will return a verdict of Not Guilty."

The defendant's proposed instruction, in the abstract, is a correct statement of the law in regard to robbery; however, as in the preceding assignment of error, the proposition is not supported by the evidence given at the trial.

The defendant's version of the altercation, set out earlier in this opinion, is that as Day was winding his wristwatch, he "just pulled his watch off." Day then remarked,

"Go on; take it, anyway. You can't get anything for a Timex watch." The two scuffled and Day was thrown to the ground. This testimony will not support an instruction on "snatching." See *State v. Parsons*, 44 Wash. 299, 87 Pac. 349 (1906) and 2 Wharton's Criminal Law and Procedure 268, § 561 (1957).

The judgment of conviction is affirmed.

FINLEY, C. J., DONWORTH, OTT, and HAMILTON, JJ., concur.