[No. 7453-2-II. Division Two. January 27, 1986.]

The State of Washington, *Respondent*, v. Harold A. Self, *Appellant*.

*Dan M. Albertson*, for appellant (appointed counsel for appeal).

*William H. Griffies, Prosecuting Attorney*, and *Chris Quinn-Brintnall, Deputy*, for respondent.

ALEXANDER, J.—Harold Self appeals his conviction by jury verdict of first degree robbery. We affirm.

Mark Sinclair, a self-employed landscaper, periodically employed Gary Lewis as a casual laborer. Sinclair and Lewis had an arrangement in which Sinclair paid Lewis in cash for his services as soon as he received payment on a contract.

In May 1983, Lewis worked for Sinclair on a landscaping job, but Sinclair did not pay Lewis promptly because he was experiencing trouble collecting from the customer.

In July 1983, Sinclair still owed Lewis $200. Lewis apparently called Sinclair several times requesting payment. A few days after such a telephone call, a "Jim West" called Sinclair and said he was interested in hiring Sinclair to do some landscaping work for him. Sinclair arranged to meet the caller on July 23, 1983, at an apartment in downtown Tacoma.

At the appointed time and place, Sinclair met a man identifying himself as "Jim West." In fact, he was meeting the defendant, Harold Self. Self ushered Sinclair into the apartment whereupon Gary Lewis appeared and demanded his money. Suddenly and without provocation, Self began striking Sinclair in the face, splitting Sinclair's lip and bruising his face. Self then produced a knife and held it to Sinclair's throat forcing him to turn over his wallet. Self and Lewis went through the wallet, scattering its contents and taking between $32 and $37 in cash from it. Self then demanded that Sinclair write a check for $200. Sinclair indicated that he was unable to comply because he did not have his checkbook with him. Enraged by the response, Self, still holding the knife, went through Sinclair's pockets,

taking the victim's car keys. Self then demanded that Sinclair sign over title to his truck. Sinclair responded that title to the truck was not in his name. This answer prompted Self to put away the knife and produce a .22 caliber rifle, which he proceeded to point at Sinclair while threatening to kill him.

A struggle then ensued between Sinclair and Self during which Self's girl friend came out of a bathroom in the apartment and told Self to give Sinclair the keys to his truck. Sinclair managed to escape and called the police. At some point during the encounter between Self and Sinclair, Self stated that Lewis had paid him $500 to collect the money for him. Sinclair never recovered his cash or his wallet, which contained several credit cards, identification and a stack of receipts.

Self was charged with first degree robbery. At trial, he did not testify. The trial court refused to give two jury instructions proposed by Self, as follows:

> Instruction No. 12
>
> It is a defense to a charge of theft that the property or service was appropriated openly and avowedly under a good faith claim of title, even though the claim be untenable.[1]
>
> Instruction No. 13
>
> If you find from the evidence that defendant took property from the person of Mark Calvin Sinclair in the honest belief that the property so taken was as payment for an indebtedness, you must return a verdict of not guilty.

The jury returned a verdict of guilty to the charge of robbery in the first degree and Self appeals.

The sole issue on appeal is whether the court erred in refusing to give the instructions proposed by Self. We hold that Self was not entitled to instructions on the defense of good faith claim of title.

---

[1]The instruction is derived from RCW 9A.56.020(2) which provides:

"In any prosecution for theft, it shall be a sufficient defense that the property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable."

Intent to steal is an essential element of the crime of robbery. *State v. Hicks,* 102 Wn.2d 182, 683 P.2d 186 (1984); *State v. Steele,* 150 Wash. 466, 273 P. 742 (1929). Therefore, a person cannot be guilty of robbery in forcibly taking property from another if he does so under the good faith belief that he is the owner, or entitled to possession of the property. This good faith belief negates the requisite intent to steal. *State v. Steele, supra.*

However, the defense of good faith claim of title is available only where self–help is used to recover *specific* property. *State v. Brown,* 36 Wn. App. 549, 676 P.2d 525, *review denied,* 101 Wn.2d 1024 (1984). Thus, where a person uses force to collect a debt with no claim of ownership in the specific property acquired, the requisite intent to steal is present and the defense is unavailable. *State v. Larsen,* 23 Wn. App. 218, 596 P.2d 1089 (1979); *State v. Brown, supra.*

Here, the record is totally devoid of any evidence that Self or Lewis had a claim of title to the specific cash, wallet, keys, credit cards and other property that were taken by force. Defendant contends that *State v. Austin,* 60 Wn.2d 227, 373 P.2d 137 (1962) dictates that the defense be given in a case such as this. We disagree. That case stands for the proposition that the defense is *not* available when a debt is unliquidated. Self's reasoning that the defense is, therefore, always available if the debt is certain distorts the *Austin* holding. His argument is further defeated by the recent case of *State v. Hicks, supra.* In *Hicks,* the court held that the trial court erred in not giving an instruction modeled on RCW 9A.56.020(2). However, the reason the court believed the defendant was entitled to that instruction was that Hicks testified that he believed the bills and coins he took from the victim were *his* specific property. The court cited *State v. Larsen, supra,* with apparent approval, and emphasized that Hicks' testimony posed "a different factual scenario from the debt collection cases . . ." *Hicks,* 102 Wn.2d at 185. The clear thrust of *Hicks* is that the *Larsen* and *Brown* cases have continuing vitality and, therefore,

the good faith claim of title defense is unavailable in debt collection cases.

Self cites decisions from other jurisdictions in support of his position that the defense should be sanctioned even though no claim has been made that the specific property or money taken was the defendant's. *See People v. Butler,* 65 Cal. 2d 569, 421 P.2d 703, 55 Cal. Rptr. 511 (1967) (wages for labor owed; defendant took victim's wallet); *Commonwealth v. White,* 5 Mass. App. 483, 363 N.E.2d 1365 (1977) ($50 in wages owed, $50 in cash taken).[2]

Even if we were not constrained by decisions in this jurisdiction clearly contrary to Self's position, the cases cited by Self do not strike us as sensible policy in light of the purposes behind Washington's criminal code. RCW 9A.04.020(1) provides that a general purpose of the code is "[t]o forbid and prevent conduct that inflicts or threatens substantial harm to individual or public interests . . ." Further, we recognize, as did the court in *State v. Larsen, supra,* that violent resolutions of creditor–debtor disputes are contrary to public policy. When confronted with an argument similar to Self's, the *Larsen* court said the following which is worthy of quotation:

> In our view, the proposition not only is lacking in sound reason and logic, but it is utterly incompatible with and has no place in an ordered and orderly society such as ours, which eschews self–help through violence. Adoption of the proposition would be but one step short of accepting lawless reprisal as an appropriate means of redressing grievances, real or fancied. We reject it out of hand.

*Larsen,* 23 Wn. App. at 219–20.

Additionally, we observe that the defense of good

[2]*But see State v. Ortiz,* 124 N.J. Super. 189, 305 A.2d 800 (1973) (inapplicable to violent debt collection); *State v. Martin,* 15 Or. App. 498, 516 P.2d 753 (1973) (inapplicable to violent debt collection); *Commonwealth v. Sleighter,* 495 Pa. 262, 433 A.2d 469 (1981) (claim of right defense inapplicable to violent debt collection); *Commonwealth v. Dombrauskas,* 274 Pa. Super. 452, 418 A.2d 493 (1980) (inapplicable to gambling disputes); *Edwards v. State,* 49 Wis. 2d 105, 181 N.W.2d 383 (1970) (available only when reclaiming one's own specific property).

faith claim of title should not be available to a third party such as Self who is not the owner of or entitled to the property taken. Self was not the party to whom the debt was owed. Although he claimed that he was acting for Lewis, one would have to strain a great deal to believe that his actions were motivated by anything other than the $500 fee he allegedly received. We believe that the statutory defense, RCW 9A.56.020(2), is generally only available to *the party* claiming title or entitlement to the specific property taken from him. Self cites *People v. Karasek,* 63 Mich. App. 706, 234 N.W.2d 761 (1975) as support for his position that the defense is available to a third party in such cases. We can only say that the rationale provided by the Michigan court for that result is not persuasive.

We conclude that Self is entitled only to have the trial court instruct upon his theory of the case, if there is evidence to support the theory. *State v. Theroff,* 95 Wn.2d 385, 622 P.2d 1240 (1980). There being no evidence presented to support the theory embodied in the two proposed instructions, the trial court did not err in refusing to give them. We affirm.

Reed, A.C.J., and Petrie, J. Pro Tem., concur.

Review denied by Supreme Court March 21, 1986.