584 So.2d 1022 (1991)
Ronald Anthony THOMAS, Appellant,
v.
STATE of Florida, Appellee.
No. 90-1591.
District Court of Appeal of Florida, First District.
July 17, 1991.
Jefferson W. Morrow of David & Morrow, P.A., Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., and Laura Rush, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
Ronald Anthony Thomas appeals his convictions of first degree murder for violating section 782.04(1)(a), Florida Statutes (1989), and armed robbery with a firearm for violating section 812.13. The jury found him guilty as charged of taking money from the deceased victim and killing him. Thomas raises a single point on appeal, urging reversible error in the trial court's failure to instruct the jury that "a well-founded belief by the defendant that he is the rightful owner of the property in dispute is a complete defense to the charge of robbery." In denying the requested instruction, the trial judge stated that such an instruction is appropriate only where the item taken is a specific identifiable object like a car, bicycle, or piece of furniture, rather than a fungible good like money.[1] Agreeing with the trial court's ruling, we affirm.
The evidence established, primarily through the pretrial confession and trial testimony given by Thomas, the following sequence of events culminating in the charged robbery and murder. About two weeks before the offense took place, the victim and a girl friend each gave Thomas $10 to purchase some crack cocaine for them. Thomas did not find any in the area, so he sent the money back to the victim through another person. Thomas learned that the victim did not give the girl friend her $10, so Thomas also reimbursed her. On the night of the offenses Thomas, seeing the victim, walked up to him with a revolver in his right hand. Thomas demanded the victim give back the $10 Thomas had paid to the girl friend, and the victim kept saying he did not know what Thomas was talking about. Thomas raised *1023 the gun back to hit the victim to make the victim understand that he could not get away with taking his (Thomas's) money, and when he swung the gun to hit the victim in the chest, the victim blocked it with his left arm and the gun went off. At that point, the victim handed Thomas the money and said, "You shot me." Thomas disclaimed any intent to shoot the victim. The jury was instructed on both premeditated murder and felony murder under count one, and armed robbery with a firearm under count two, without the so-called "good faith" or "claim of right" instruction requested by Thomas. The jury found Thomas guilty of both offenses as charged.[2]
Both Thomas and the state agree that no Florida appellate decision has decided whether a claim of right defense is available to a defendant who seeks to collect a debt or recover money by use of force or threat, and our research has not shown any Florida case directly on point. In support of the requested instruction, Thomas relies primarily on Thomas v. State, 526 So.2d 183 (Fla. 3d DCA 1988), rev. denied, 536 So.2d 245 (Fla. 1988), and Rodriguez v. State, 396 So.2d 798 (Fla. 3d DCA 1981), arguing that both cases have recognized that a defendant's good faith belief that he has the right to the property taken negates the requisite intent to commit robbery and constitutes a lawful defense to the offense charged. The state, on the other hand, distinguishes those cases from the facts of this case and argues that while many other jurisdictions have considered this issue, the majority of such jurisdictions have concluded that public policy reasons militate against the availability of this defense by any defendant charged with robbery, citing the annotation at 88 A.L.R.3d 1309 and the following cases: State v. Larsen, 23 Wash. App. 218, 596 P.2d 1089, 1090 (1979); Rozika v. State, 520 N.E.2d 1267 (Ind. 1988); Commonwealth v. Sleighter, 495 Pa. 262, 433 A.2d 469 (1981); Austin v. State, 86 Wis.2d 213, 271 N.W.2d 668 (1978); State v. Self, 42 Wash. App. 654, 713 P.2d 142 (1986); State v. Martin, 15 Or. App. 498, 516 P.2d 753 (1974); and State v. Schaefer, 163 Ariz. 626, 790 P.2d 281 (Ct.App. 1990). The state urges that to allow violent self-help as a defense, even if the defendant has a good faith belief in his right to recover such property, would conflict with the statutory provision that the money or property of another which is the subject of a robbery charge under section 812.13(1) means property "in which a person has an interest upon which another person is not privileged to infringe without consent, whether or not the other person also has an interest in the property." § 812.012(4), Fla. Stat. (1989).
We agree with the state that the requested instruction was properly denied in this case for two reasons: (1) the money taken from the victim was not specific property in which the defendant had a prior ownership or possessory interest and, being money taken to pay off a disputed debt, did not fall within the scope of this common law defense; and (2) the current statutory provisions in the robbery statutes in chapter 812 are inconsistent with the application of the "good faith" or "claim of right" defense to violent or forcible taking contemplated by the robbery statute. We now explicate the rationale underlying these two conclusions.
It appears that most jurisdictions recognize the common law rule that a forcible taking of property under a bona fide claim of right is not robbery where the taker has a good faith belief that he is the owner of the property or is entitled to immediate possession, because this belief negates the taker's intent to steal or commit larceny. The courts of many jurisdictions, including Florida courts, have applied this principle to forcible takings under a bona fide claim of right to specific property, property taken as security, and gambling gains or losses. See generally 77 C.J.S. Robbery § 22(c) (1952); 67 Am.Jur.2d Robbery § 19 (1985); Annot., 88 A.L.R.3d 1309 (1978).
Two recent Florida decisions illustrate the application of this rule. In Rodriguez *1024 v. State, 396 So.2d 798 (Fla. 3d DCA 1981), the defendants were managers of a motel and had retained and failed to submit to the motel owner the proceeds from three room rentals, claiming that they believed the money was theirs under the terms of a compensation agreement. They were prosecuted and convicted of theft of the money. On appeal, the third district reversed the conviction for a new trial, holding that the trial court erred in refusing to give the following requested jury instruction: "Where it clearly appears that the taking of property was consistent with honest conduct, as where the taker honestly believes that he or she has a right to property, the taker cannot be convicted of theft, even though the taker may have been mistaken." Id. at 798-99. In Thomas v. State, 526 So.2d 183 (Fla. 3d DCA 1988), a prosecution for armed robbery, the court found reversible error in the trial court's failure to instruct the jury that the defendant's good faith belief that the bicycle he forcibly took from the victim belonged to him was a valid defense to the robbery charge. Relying on Rodriguez and the line of older appellate decisions cited therein recognizing the common law rule "that a wellfounded belief in one's right to the allegedly stolen property constitutes a complete defense to a charge of theft," the court concluded that since a theft is an essential element of robbery, the trial court was obliged to give the instruction. Id. at 184.
On the other hand, in many jurisdictions the claim of right defense has been denied in cases involving charges of robbery where the collection of a debt was honestly believed to be due but force or violent intimidation was used to effect the taking. The underlying rationale for this position has most frequently been said to be that the defendant has no ownership or immediate possessory interest in the specific property taken, i.e., money, and under such circumstances the requisite intent to steal is present. For example, affirming a conviction for robbery in State v. Larsen, 23 Wash. App. 218, 596 P.2d 1089 (1979), the court approved an instruction, given over the defendant's objections, stating that "a creditor's intent to collect a debt from his debtor by use or threatened use of immediate force, violence or fear of injury is not a defense to a charge of Robbery." The court explained:
Where self-help is used to recover specific property, it is a defense to a charge of robbery that a claim of title is made in good faith... . Under these circumstances, the defense is allowed because it raises the question of whether the actor proceeded with the intent necessary to constitute the crime of robbery. A contrary rule would prevent an owner of property who caught a thief in the act of carrying away that property from retaking it by force... . Where, as in this case, a person uses force to collect a debt with no claim of ownership in the specific property acquired, the defense is not allowed because the requisite intent necessary to constitute robbery is present... .
Moreover, acceptance of Larsen's argument would sanction debt collection by force contrary to one of the purposes of Washington's Criminal Code, which is "[t]o forbid and prevent conduct that inflicts or threatens substantial harm to individual or public interests." RCW 9A.04.020(1)(a). As stated in State v. Ortiz, 124 N.J. Super. 189, 192, 305 A.2d 800, 802 (1973):
In our view, the proposition not only is lacking in sound reason and logic, but it is utterly incompatible with and has no place in an ordered and orderly society such as ours, which eschews self-help through violence. Adoption of the proposition would be but one step short of accepting lawless reprisal as an appropriate means of redressing grievances, real or fancied. We reject it out of hand.
596 P.2d at 1090 (citations omitted). Similarly, in State v. Martin, 516 P.2d at 753, the court rejected the application of the claim of right as a defense to robbery in that case, and explained:
In so doing, it is important to distinguish between, on the one hand, situations where a person simply uses self-help to recover a specific chattel to which he has the right to immediate possession, and, *1025 on the other hand, situations where a person attempts to collect a debt out of another's money, with no pretense of ownership rights in the specific coins and bills. As to the former situation, State v. Luckey, 150 Or. 566, 46 P.2d 1042 (1935), holds that intent to steal is absent when a person retakes wrongfully held specific personal property to which he has the right to possession... .
But where, as here, the claim is to money owed, and in order to satisfy the claim, the creditor takes money or other fungible property to which he has no title or right of possession, then the intent to steal is present. Only if the defendant herein had ownership rights in specific coins and bills in Barley's possession would the principle of State v. Luckey, supra, be applicable. Here, there was no assertion of such an ownership right; the defendant was attempting to satisfy his alleged claim at gunpoint from whatever cash Barley might have had on his person.
The distinction between reclaiming specific personal property and taking undifferentiated money from a debtor to repay a debt has been pointed out by the Wisconsin Supreme Court in Edwards v. State, 49 Wis.2d at 113-114, 181 N.W.2d at 388:
"The distinction between specific personal property and money in general is important. A debtor can owe another $150 but the $150 in the debtor's pocket is not the specific property of the creditor. One has the intention to steal when he takes money from another's possession against the possessor's consent even though he also intends to apply the stolen money to a debt. The efficacy of self-help by force to enforce a bona fide claim for money does not negate the intent to commit robbery. Can one break into a bank and take money so long as he does not take more than the balance in his savings or checking account? Under the majority rule the accused must make change to be sure he collects no more than the amount he believes is due him on the debt. A debt is a relationship and in respect to money seldom finds itself embedded in specific coins and currency of the realm. Consequently, taking money from a debtor by force to pay a debt is robbery. The creditor has no such right of appropriation and allocation."
See also Moyers v. State, 186 Ga. 446, 197 S.E. 846, 116 A.L.R. 981 (1938); State v. Pierce, 208 Kan. 19, 490 P.2d 584 (1971); Edwards v. State, 49 Wis.2d 105, 181 N.W.2d 383 (1970).
516 P.2d at 755-56. For other cases reaching a like result, see State v. Schaefer, 163 Ariz. 626, 790 P.2d 281, 284 (Ct.App. 1990); State v. Self, 42 Wash. App. 654, 713 P.2d 142, 144 (1986); Commonwealth v. Sleighter, 495 Pa. 262, 433 A.2d 469 (1981); Austin v. State, 86 Wis.2d 213, 271 N.W.2d 668 (1978); Edwards v. State, 49 Wis.2d 105, 181 N.W.2d 383 (1970). We agree with the rationale of these cases, and hold that the common law rule set forth in Thomas v. State, 526 So.2d 183, is not available to defeat charges of robbery for forcibly taking money to satisfy a debt owed by the victim to the taker.
There is also a more fundamental reason for not applying the claim of right defense in robbery prosecutions like this case, however. This defense is contrary to the current Florida statutes governing prosecutions for robbery and the public policy manifested in those statutes. Although the "common law of England in relation to crimes, except so far as the same relates to the modes and degrees of punishment, shall be of full force in this state where there is no existing provision by statute on the subject," § 775.01, Fla. Stat. (1989), since the adoption of the "Florida Criminal Code" in 1974, ch. 74-383, Laws of Florida, nearly all prosecutions for criminal offenses have been governed by an applicable criminal statute. Thus, in the instant case, the prosecution for both murder and robbery were predicated on appropriate Florida criminal statutes cited at the beginning of this opinion. Each of those statutes has superseded the corresponding common law criminal offense. One of the stated purposes for doing so is "[t]o proscribe conduct *1026 that improperly causes or threatens to cause substantial harm to individual or public interest." § 775.012(1), Fla. Stat. (1989).
The offense of "robbery" is defined in section 812.13 to mean "the taking of money or other property which may be the subject of larceny from the person or custody of another when in the course of the taking there is the use of force, violence, assault, or putting in fear." This definition was in the statutes when the criminal code was adopted in 1974, and the reference therein to "the subject of larceny" relates to the old larceny statute, section 812.021, Florida Statutes (1974), which was repealed and superseded in 1977 by the current theft statute, section 812.014. Ch. 77-342, § 4, Laws of Fla.[3] However, this reference to "larceny" now means the statutory offense of "theft" by virtue of the provision in section 812.012(2)(d) that defines "obtains or uses" for purposes of theft under section 812.014 to mean "[c]onduct previously known as stealing; larceny; purloining; abstracting; embezzlement; misapplication; misappropriation; conversion; or obtaining money or property by false pretenses, fraud, or deception." (Emphasis added.) Accordingly, the courts have been substituting the criminal offense of "theft" for "larceny" in defining the essential elements of "robbery." E.g., Thomas v. State, 526 So.2d at 184. That being so, it seems only appropriate to read into the definition of "robbery" those portions of chapter 812 that are pertinent to the statutory meaning of "theft."
The offense of theft, as currently defined in section 812.014, is committed when a person "knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) [d]eprive the other person of a right to the property or a benefit therefrom; or (b) [a]ppropriate the property to his own use or to the use of any person not entitled thereto." (Emphasis added.) "Property of another" is defined in section 812.012(4) to mean "property in which a person has an interest upon which another person is not privileged to infringe without consent, whether or not the other person also has an interest in the property." These provisions manifest a legislative policy and statutory intent to criminally proscribe the taking of any property in the possession of another so long as the taker is required to obtain the consent of the person holding the property in accordance with law before being entitled to deprive that person of possession. We agree with the state's argument that these statutory provisions, read in context with the quoted purpose of the criminal code, are inconsistent with the rationale of the common law claim of right defense, at least insofar as a forceful or violent taking of money is concerned. See State v. Schaefer, 163 Ariz. 626, 790 P.2d 281 (Ct.App. 1990) (claim of right defense no longer available in robbery prosecution in light of public policy concerns and certain statutory language in A.R.S. § 13-1801(A)(12), which is substantially similar to that in § 812.012(4), Fla. Stat.); State v. Larsen, 596 P.2d 1089; State v. Martin, 516 P.2d 753. We hold that the current statutory provisions governing robbery and theft clearly preclude reliance of the claim of right defense set forth in the requested instruction under the circumstances of this case, because Thomas had no lawful right whatsoever to take money from the victim to satisfy a disputed debt through the use of force and violence to overcome the victim's refusal to give consent.
The decisions in Rodriguez v. State, 396 So.2d 798, and Thomas v. State, 526 So.2d 183, are materially distinguishable. In Rodriguez, there was no taking of any property from the possession of another; rather, the defendants lawfully came into possession of the money constituting room rental receipts and simply failed to turn these receipts over to the owner based on a *1027 dispute as to the terms of their compensation. This is materially different from an attempt to forcibly remove money from another to satisfy a disputed debt. In Thomas, the defendant attempted to retrieve specific identifiable property, i.e., a bicycle he recognized as having been stolen from him. Again, the case does not involve the forceful taking of money. Furthermore, neither Thomas nor Rodriguez appears to have considered the effect of the statutory changes to chapter 812 discussed above regarding the applicability of this defense. For these reasons, neither case compels reversal in this case.
Finding no error in the trial court's denial of the requested instruction, the appealed conviction is AFFIRMED.
SHIVERS, J., concurs.
KAHN, J., concurs with opinion.
KAHN, Judge, concurring.
I concur fully in the result reached by the majority. I would base this decision, however, exclusively upon the analysis set out by Judge Zehmer in support of the second reason noted for denial of the requested jury charge, i.e., Florida's statutory prohibition against, and the accompanying definition of, robbery are inconsistent with the position advanced by appellant.
Were we to affirm the trial court on this basis, the theoretical discussion of the applicability of the claim of right defense to instances of taking the specific property claimed in good faith by the perpetrator would not be necessary. Similarly unnecessary would be the need to distinguish (and thereby perhaps tacitly approve) the view of our sister court in Thomas v. State, 526 So.2d 183 (Fla. 3d DCA 1988).
NOTES
[1] However, as the parties noted in their briefs, the trial judge allowed Thomas to argue this point in closing argument.
[2] The verdict form for count one did not distinguish between premeditated murder and felony murder, so we are unable to know which theory the jury relied on in reaching its verdict.
[3] These 1977 amendments, commonly referred to as the "omnibus theft statute," were part of the legislature's overall revision of the criminal statutes relating to theft and stolen property. See, e.g., State v. Lewis, 364 So.2d 1223 (Fla. 1978); In the interest of D.N., 529 So.2d 1217, 1220 (Fla. 1st DCA), rev. dismissed, 537 So.2d 568 (Fla. 1988); Colvin v. State, 445 So.2d 657 (Fla. 1st DCA), rev. dismissed, 450 So.2d 485 (Fla. 1984).