# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　Respondent,<br><br>　　　v.<br><br>EARL RAY PHILLIPS,<br><br>　　　　　　　Appellant. | DIVISION ONE<br><br>No. 77562-6-I<br><br>PUBLISHED OPINION<br><br>FILED:  July 1, 2019 |

DWYER, J. — Earl Ray Phillips was charged with robbery in the second degree and convicted after a jury trial.  On appeal, he avers that the information charging him with the offense was constitutionally defective in that it did not include all of the elements of the offense of robbery in the second degree.  He also perceives error in the absence of a jury instruction on the defense of good faith claim of title.  Finally, he asserts that he received ineffective assistance of counsel because his attorney did not propose a good faith claim of title instruction.  Finding no error, we affirm.

I

Clifford Van Horne, night manager at a Red Apple Market in Seattle, saw Earl Phillips enter the store, select a case of 18 beer bottles from the refrigerator, and walk past the store's checkout counter without paying for the item.  Van Horne followed Phillips past the counter.  Accosting Phillips as he was leaving the building, Van Horne grabbed the case of beer and told Phillips to return the

item. Phillips attempted to strike Van Horne, but Van Horne ducked and was not hit.

Oscar Cerrillo, a store cashier on duty at the time, also saw Phillips attempt to leave without paying for the beer. Cerrillo followed Van Horne and attempted to assist him in the physical struggle with Phillips. Phillips, for his part, pushed back and refused to surrender the beer.

Phillips insisted that he had a receipt for the item, but both Van Horne and Cerrillo, having seen him bypass the checkout counter without paying for it, did not believe him. Both employees told Phillips that he would be free to go upon relinquishment of the beer, but Phillips did not yield. As this struggle was ongoing, the case of beer fell to the ground, breaking some of the glass bottles within.

At this point, Troy Jenks, a regular customer at the Red Apple, drove into the store's parking lot and saw the two employees scuffling with Phillips. Jenks was able to restrain Phillips and held him on the ground while Van Horne left to telephone the police. While he was being restrained by Jenks, Phillips bit Jenks's bicep with sufficient force to puncture the skin. Jenks continued to restrain Phillips until the police arrived on the scene. Upon arrival, Seattle Police Officer Nathan Bertsch searched Phillips and did not find a receipt for purchase of the beer.

Phillips was charged with robbery in the second degree and assault in the third degree. The information charging Phillips with robbery in the second degree stated:

2

That the defendant Earl Ray Phillips in King County, Washington, on or about February 8, 2017, did unlawfully and with intent to commit theft take personal property of another, to-wit: merchandise, from the person and in the presence of Clifford Van Horne and Oscar [Cerrillo], who had an ownership, representative, or possessory interest in that property, against his will, by the use or threatened use of immediate force, violence and fear of injury to such person or his property and to the person or property of another;

Contrary to RCW 9A.56.210 and 9A.56.190, and against the peace and dignity of the State of Washington.

At the close of the trial, the jury found Phillips guilty on both counts. However, prior to sentencing, Phillips moved for a new trial based on his trial counsel's failure to propose a jury instruction on self-defense. The trial court granted the motion only as to Phillips's conviction for assault in the third degree. The State chose not to retry the assault charge and it was dismissed. The trial court imposed a standard range sentence of 70 months of incarceration on the robbery conviction.[1]

II

Phillips first contends that the information charging him with robbery in the second degree was constitutionally deficient. This is so, he avers, because it did not specifically state that he had used force or fear to obtain or retain possession of the property at issue. We disagree with his contention that this is an essential element of robbery such that its omission amounted to constitutional error.

Pursuant to both the Constitution of the United States and the Washington Constitution, an accused has a right to be informed of the criminal charges

---

[1] Phillips's motion to supplement the record with certain proposed jury instructions is granted.

3

against him or her to enable adequate preparation of a defense. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22 (amend. X). To ensure the protection of this right, a defendant must be provided a charging document setting forth every material element of the charge or charges against the defendant, along with all essential supporting facts. State v. McCarty, 140 Wn.2d 420, 425, 998 P.2d 296 (2000), overruled on other grounds by State v. Siers, 174 Wn.2d 269, 274 P.3d 358 (2012).

"The standard of review for evaluating the sufficiency of a charging document is determined by the time at which the motion challenging its sufficiency is made." State v. Taylor, 140 Wn.2d 229, 237, 996 P.2d 571 (2000). When a defendant challenges the sufficiency of the charging document before a verdict is rendered, the charging language must be strictly construed. Taylor, 140 Wn.2d at 237. If the defendant challenges the sufficiency after the verdict is rendered, the charging document must be construed liberally in favor of validity. Taylor, 140 Wn.2d at 237.

A challenge to the sufficiency of a charging document involves a question of constitutional due process and may be raised for the first time on appeal. See State v. Leach, 113 Wn.2d 679, 691, 782 P.2d 552 (1989) ("An appellant may at any time claim an error which was not raised in the trial court if the error affects a constitutional right."); RAP 2.5(a)(3). When an appellant raises such a challenge for the first time on appeal, as here, we employ the two-prong test set forth in State v. Kjorsvik, 117 Wn.2d 93, 106, 812 P.2d 86 (1991) ("The standard of review we here adopt will require at least some language in the information

giving notice of the allegedly missing element(s) *and* if the language is vague, an inquiry may be required into whether there was actual prejudice to the defendant.").

To satisfy the first prong, we must liberally construe the language of the charging document to determine if it contains the necessary elements of the crime charged. McCarty, 140 Wn.2d at 425. If the charging document can be construed as containing the required elements, even if only in vague terms, we must then determine if the language resulted in any actual prejudice to the defendant (the second prong of the test). McCarty, 140 Wn.2d at 425. However, if the necessary elements cannot be found in or even fairly inferred from the charging document, we presume prejudice without reaching the second prong of the test. McCarty, 140 Wn.2d at 425. The remedy for an insufficient charging document is reversal and dismissal of the charges without prejudice to the State's ability to refile. State v. Quismundo, 164 Wn.2d 499, 504, 192 P.3d 342 (2008).

"A person is guilty of robbery in the second degree if he or she commits robbery." RCW 9A.56.210(1). The elements of robbery are set forth in the definitional statute, RCW 9A.56.190:

> A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. *Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.* Such taking constitutes robbery whenever it appears that, although the taking was fully

completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

(Emphasis added.)

Phillips contends that the information in his case did not properly set forth all of the essential elements of the crime of robbery in the second degree, as it did not recite the second sentence of RCW 9A.56.190 (emphasized above). In response, the State asserts that this sentence is merely definitional and exists only to explain the "transactional" understanding of how robbery occurs, and not to broaden the elements of robbery set forth in the first sentence. Given that Phillips did not raise this issue in the trial court, we apply the standard of review set forth in Kjorsvik, 117 Wn.2d at 106. Thus, we must first determine whether the language of the amended information included all of the essential elements of the crime of robbery in the second degree. This requires us to explicate the essential elements of that crime.

Washington law incorporates a "transactional" view of the crime of robbery, meaning that a robbery need not involve the use of force in the initial taking of property but, rather, may involve the use of force to retain property already taken or to impede the rightful owner's efforts to retrieve it. State v. Handburgh, 119 Wn.2d 284, 293, 830 P.2d 641 (1992). Under this transactional view, a taking of property is "ongoing until the assailant has effected an escape." State v. Truong, 168 Wn. App. 529, 535-36, 277 P.3d 74 (2012).

A Supreme Court decision, State v. Johnson, 155 Wn.2d 609, 121 P.3d 91 (2005), illustrates the implications of this transactional view. There, a man who

used force to effect an escape only after abandoning stolen property was held not to have committed robbery. The court explained:

> The trial court's unchallenged findings of fact state that Johnson was trying to escape when he punched the security guard in the nose. And the trial court concluded that even though Johnson did not use force to obtain or retain the property, he was guilty of the crime because the transactional view of robbery includes force used during an escape. But as noted above, the force must relate to the taking or retention of the property, either as force used directly in the taking or retention or as force used to prevent or overcome resistance "to the taking." Johnson was not attempting to retain the property when he punched the guard but was attempting to escape after abandoning it.

Johnson, 155 Wn.2d at 611.

This decision makes clear the relationship between the first and second sentences of RCW 9A.56.190. The first sentence, which sets forth the statutory elements of robbery, includes the element of "the use or threatened use of immediate force, violence, or fear of injury." The second sentence defines "force," and "fear," as used in sentence one. "*Such force or fear* must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial." (Emphasis added.) It also defines to "obtain" or "retain" as a form of "take," as used in sentence one.

Similarly, the third sentence, which begins, "Such taking . . ." is plainly referencing and defining the word "takes," as used in sentence one. It is definitional and does not broaden the statutory elements of robbery.

Our view that the statutory elements of robbery are set forth in the first sentence while sentences two and three are mere definitional statements is

7

supported by Supreme Court precedent. In <u>Handburgh</u>, the court discussed the interplay between sentences one and two, concluding that "a forceful retention of stolen property in the owner's presence is the type of 'taking' contemplated by the robbery statute." 119 Wn.2d at 290. Thus, a "retention" is a type of "taking." A "retention" is not different from a "taking." A "retention" is included within a "taking." A "retention" is not in addition to, or an alternative to, a "taking."

Seven years ago, we were called on to resolve a sufficiency of the evidence challenge to a conviction of robbery in the first degree. <u>Truong</u>, 168 Wn. App. 529. Resolving the challenge required us to set forth the essential elements of the offense. <u>Truong</u>, 168 Wn. App. at 534 ("Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits a rational trier of fact to *find the essential elements of the crime* beyond a reasonable doubt." (emphasis added)). We did so, delineating the essential elements of robbery as "(1) the unlawful taking (2) of personal property (3) from the person or presence of another (4) against his will and (5) by the use or threatened use of immediate force." <u>Truong</u>, 168 Wn. App. at 537 (citing RCW 9A.56.190; <u>State v. Handburgh</u>, 61 Wn. App. 763, 765, 812 P.2d 131 (1991), <u>rev'd on other grounds</u>, 119 Wn.2d 284, 830 P.2d 641 (1992)).[2]

Truong, however, citing to <u>Johnson</u>, maintained that possession was an essential element of the crime of robbery and that proof of this element was required to support a conviction for that crime. <u>Truong</u>, 168 Wn. App. at 536.

---

[2] There is also a nonstatutory element of robbery, intent to commit theft, that is not at issue herein. <u>State v. Allen</u>, 159 Wn.2d 1, 9 n.3, 147 P.3d 581 (2006).

Truong had used force to take property, but had immediately passed that property on to an accomplice. She contended that, pursuant to the second sentence of RCW 9A.56.190, an individual's act could not meet the force element of robbery if that individual did not have actual or constructive possession of the property. Truong, 168 Wn. App. at 535.

We first noted that no case authority set forth possession as an essential element of robbery. Truong, 168 Wn. App. at 537. Next, applying the same transactional analysis as that employed in Johnson, we held that Truong's use of force to prevent the victim from retrieving her property, although the property was no longer in Truong's possession, satisfied the force element of robbery. Truong, 168 Wn. App. at 537-38. Thus, the evidence was sufficient to support a verdict that Truong was guilty of robbery in the first degree. Truong, 168 Wn. App. at 542.

Several months later, a decision of Division Two also posited that the essential statutory elements of robbery were contained within the first sentence of RCW 9A.56.190 and thus rejected the argument that omission of the second sentence of the statute in an information rendered it deficient. State v. Witherspoon, 171 Wn. App. 271, 294-95, 286 P.3d 996 (2012) (Quinn-Brintnall, J., lead opinion), 171 Wn. App. at 315 (Hunt, J., concurring and dissenting in part), aff'd, 180 Wn.2d 875, 329 P.3d 888 (2014).[3]

---

[3] The decision was rendered by a split panel. Judge Hunt concurred in the portion of the lead opinion discussed herein, while Judge Armstrong, also on the panel, agreed that the statutory elements of robbery were the same as those discussed in Truong. Witherspoon, 171 Wn. App. at 315, 320.

Phillips's present assertion, that Truong and Witherspoon were wrongly decided, relies on a recent Division Three opinion. Indeed, in that opinion, Division Three identifies the use of force to obtain or retain possession of property as a statutory element of robbery. State v. Todd, 200 Wn. App. 879, 885-86, 403 P.3d 867 (2017).[4] The Todd opinion is best understood in light of its assertion that the Supreme Court has identified force or fear being used to obtain or retain possession of property as an element of robbery. See 200 Wn. App. at 885-86. In fact, the Supreme Court opinion to which the Todd opinion cited for this proposition, State v. Allen, 159 Wn.2d 1, 147 P.3d 581 (2006), did *not* so hold.

Allen involved a sufficiency of the evidence challenge in a prosecution for aggravated first degree murder with robbery in the first or second degree as the aggravator. The opinion language cited to by the Todd court was this:

> Thus, to establish the aggravating factor of robbery in this case, the State had to prove beyond a reasonable doubt that Allen: (1) took the cashbox from his mother's person or in her presence (2) against her will and (3) used force or fear to take the cashbox or to prevent his mother from resisting the taking.

Allen, 159 Wn.2d at 9 (cited by Todd, 200 Wn. App. 885-86).

As the quotation clarifies, the Allen court was not engaged in announcing a new statutory element of robbery. Rather, it was discussing what the State—in that case, as the case had been tried—had to establish to prove guilt of the charge. There are no statutory elements of robbery requiring proof of

---

[4] The Todd court acknowledged that its holding was at variance with our decision in Truong and Division Two's decision in State v. Ralph, 175 Wn. App. 814, 308 P.3d 729 (2013). Todd, 200 Wn. App. at 885.

10

"cashboxes" or "mothers." Instead, the court was referencing the State's theory of the case at hand—and the court was evaluating whether the evidence adduced actually proved that theory. The Allen opinion did not purport to add to the statutory elements of robbery.

In addition to Todd, Phillips relies on an older Division Two case, State v. Phillips, 98 Wn. App. 936, 991 P.2d 1195 (2000). Therein, the court listed the statutory elements of robbery as "'(1) a taking of personal property; (2) from the person or in one's presence; (3) by the use or threatened use of force, or violence, or fear of injury; (4) such force or fear being used to obtain or retain the property.'" Phillips, 98 Wn. App. at 943 (quoting State v. Strong, 56 Wn. App. 715, 719, 785 P.2d 464 (1990)). Strong, a still-older Division Two opinion, was the sole authority relied on by the Phillips court for this proposition. However, the statutory elements of robbery were not at issue in Strong; the issue before the Strong court was, instead, whether the information was required to allege the common law robbery element of intent to deprive the victim of the property. 56 Wn. App. at 716.

In fact, in both Phillips and Strong, charging documents omitting the second sentence of RCW 9A.56.190 were held to be constitutionally sufficient and inclusive of all of the statutory elements of the crime. Phillips, 98 Wn. App. at 939, 943; Strong, 56 Wn. App. at 716, 719. Furthermore, neither the majority, concurring or dissenting opinions in Witherspoon, a more recent Division Two decision, cite to either of these cases. Division Two plainly does not view them as controlling on the issue presented; neither do we.

11

In light of all of this, we adhere to our holding in Truong as to the statutory elements of robbery. Thus, given that the information herein satisfied the first prong of the Kjorsvik standard, Phillips must show actual prejudice flowing from any vagueness in the charging document to obtain relief. He has neither shown, nor even alleged, such prejudice. The information charging Phillips with robbery in the second degree was constitutionally sufficient.

III

Phillips next asserts, also for the first time on appeal, that he acted with a good faith claim of title to the case of beer. Accordingly, Phillips argues, the trial court should have instructed the jury on good faith claim of title as a defense to the charge of robbery in the second degree, notwithstanding that neither the State nor defense counsel requested such an instruction. We disagree.

A

At trial, Phillips did not request that the jury be instructed on the defense of good faith claim of title. Our inquiry, then, is whether the trial court was required to, sua sponte, interject such an instruction into the case. We conclude that the trial court had no such duty.

Coinciding with a defendant's right to present a full defense, and to have the jury be fully instructed on the defense theory of the case, is a defendant's right to control that defense. State v. Jones, 99 Wn.2d 735, 740-41, 664 P.2d 1216 (1983); State v. McSorley, 128 Wn. App. 598, 604, 116 P.3d 431 (2005). Accordingly, courts may not force a defense on a criminal defendant when the defendant neither advances nor evidences a desire to advance such a defense.

12

Jones, 99 Wn.2d at 743; McSorley, 128 Wn. App. at 604 (neither State nor trial court may compel defendant to raise or rely on an affirmative defense not advanced by defendant). In Jones, our Supreme Court, in reviewing a trial court's imposition of a plea of not guilty by reason of insanity on an unwilling defendant, stated:

> A defendant who is not guilty because of insanity is no more blameless than a defendant who has a valid alibi defense or who acted in legitimate self-defense. Yet courts do not impose these other defenses on unwilling defendants.

99 Wn.2d at 743.

Phillips was entitled to defend himself against the offense with which he was charged without utilizing the defense of a good faith claim of title as to that charge. The record indicates that Phillips's trial counsel sought acquittal on the robbery charge by maintaining that no robbery occurred. The jury was instructed that, in order to convict Phillips of robbery in the second degree, the State needed to prove beyond a reasonable doubt that Phillips unlawfully took personal property from the person of or in the presence of another. Had the jurors accepted Phillips's argument and evidence, including his contention that he had paid for the beer, an acquittal on the charge of robbery would have followed.

The rule for which Phillips advocates would contravene a criminal defendant's right to control his or her own defense strategy. A trial court interposing, sua sponte, jury instructions related to a defense that the defendant neither advanced nor tailored the defense strategy to address, after the defense rests its case, might prejudice the defendant. The law does not envision such trial court behavior but, rather, provides that a defendant has a right to have the

jury fully instructed on the defense theory of the case, State v. Staley, 123 Wn.2d 794, 803, 872 P.2d 502 (1994), which is effectuated by defense counsel proposing the desired instructions to the court. See CrR 6.15. Courts may not impose unwanted defenses on unwilling defendants. Jones, 99 Wn.2d at 743.

The jury instructions given by the trial court met the applicable standard. They allowed Phillips to argue his theory of the case and properly informed the jury of the applicable law. State v. Barnes, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). There was no requirement that the court interpose an additional defense theory via jury instruction *sua sponte*.

B

As to the merits of Phillips's contention, they are absent. A defendant is not entitled to an instruction which inaccurately states the law or for which there is no evidentiary support. State v. Crittenden, 146 Wn. App. 361, 369, 189 P.3d 849 (2008). A trial court errs by giving an instruction that is not supported by the evidence. State v. Hoffman, 116 Wn.2d 51, 110-11, 804 P.2d 577 (1991). Here, the trial evidence did not support issuance of the referenced instruction.

> Intent to steal is an essential element of the crime of robbery. State v. Hicks, 102 Wn.2d 182, 683 P.2d 186 (1984); State v. Steele, 150 Wash. 466, 273 P. 742 (1929). Therefore, a person cannot be guilty of robbery in forcibly taking property from another if he does so under the good faith belief that he is the owner, or entitled to possession of the property. This good faith belief negates the requisite intent to steal. State v. Steele, supra.
>
> However, the defense of good faith claim of title is available only where self-help is used to recover *specific* property. State v. Brown, 36 Wn. App. 549, 676 P.2d 525, review denied, 101 Wn.2d 1024 (1984). Thus, where a person uses force to collect a debt with no claim of ownership in the specific property acquired, the requisite intent to steal is present and the defense is unavailable.

State v. Larsen, 23 Wn. App. 218, 596 P.2d 1089 (1979); State v.
Brown, supra.

State v. Self, 42 Wn. App. 654, 657, 713 P.2d 142 (1986).

Here, there was no evidence that Phillips had an ownership interest in any
particular case of beer prior to going into the store. As discussed in Self:

> Here, the record is totally devoid of any evidence that Self or
> Lewis [Self's cohort] had a claim of title to the specific cash, wallet,
> keys, credit cards and other property that were taken by force. . . .
> [T]he defense is *not* available when a debt is unliquidated.

42 Wn. App. at 657.

Phillips did not claim that he had earlier paid for that exact case of beer
and simply went to the Red Apple to obtain it. To the contrary, his present
assertion of a good faith claim of title defense is that he first selected the case of
beer, then paid for it at a checkout stand, and then was accosted as he was
leaving the store. But this scenario, if accepted by the jury, establishes a
defense to the robbery. It does not establish the defense of good faith claim of
title. If the jury believed that Phillips paid for the beer after obtaining it then there
would be no theft of the beer and, hence, no robbery. The good faith claim of
title defense would be surplusage—simply unnecessary. However, if the jury did
not believe that Phillips paid for the beer there would be a theft—and no good
faith claim of title defense. The instruction was unwarranted.[5]

---

[5] In the alternative to his argument that the trial court abused its discretion by not, *sua
sponte*, instructing the jury on the good faith claim of title defense, Phillips avers that he received
ineffective assistance of counsel because his attorney did not request such an instruction. This
assertion, too, is without merit.

In order to establish ineffective assistance of counsel, the defendant must establish both
that his attorney's performance was deficient and that this deficiency prejudiced the defendant.
Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984);
State v. Weaville, 162 Wn. App. 801, 822-23, 256 P.3d 426 (2011). "Where the claim of
ineffective assistance is based upon counsel's failure to request a particular jury instruction, the

No. 77562-6-I/16

Affirmed.

_____
Dwyer, J.

WE CONCUR:

_____
Chun, J.

_____
Verellen, J.

defendant must show he was entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice." State v. Thompson, 169 Wn. App. 436, 495, 290 P.3d 996 (2012) (citing State v. Johnston, 143 Wn. App. 1, 21, 177 P.3d 1127 (2007)).  There is a strong presumption that defense counsel's performance was reasonable. Weaville, 162 Wn. App. at 823.
    As Phillips has not shown an entitlement to the instruction, the premise for his averment—that his attorney's performance was deficient—is not established. Thompson, 169 Wn. App. at 495.  The claim fails.

16